**Mildred Yesenia DUARTE DE GUINAC, and Mauro Jose Guinac Quiej, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 98–70030.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1999.

Filed June 8, 1999.

Erika Anne Kreider, Tucson, Arizona, for the petitioners.

Frank W. Hunger, Linda S. Wendtland, Joan E. Smiley, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for the respondent.

Before: KRAVITCH,[1] REINHARDT, and T.G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

Mauro Jose Guinac Quiej ("Guinac") and Mildred Yesenia Duarte de Guinac ("Duarte"), husband and wife, petition this court for review of a final order of the Board of Immigration Appeals ("BIA" or "Board") dismissing on the merits their consolidated appeals from the order of an Immigration Judge ("IJ"). The IJ's order had denied their applications for asylum and withholding of deportation. We have jurisdiction under 8 U.S.C. § 1105a.[2] We conclude that Guinac has a well-founded fear of persecution on account of his race. Accordingly, we grant the petition for review.[3]

I. *General Legal Principles*

■ The Attorney General has discretion to grant an alien asylum if the alien is

---

**1.** The Honorable Phyllis A. Kravitch, Senior Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

**2.** The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996), repealed this section. However, the IIRIRA provides transitional rules that apply to cases that were commenced prior to April 1, 1997, and in which a final deportation order was issued on or after October 30, 1996. The transitional rules apply to this case.

**3.** Petitioner Duarte applied for asylum both as a primary applicant and as a derivative beneficiary of Guinac's application. Because we find that Guinac is eligible for asylum and entitled to withholding of deportation, we do not reach Duarte's application, which presents the issue of whether spouses of military deserters may constitute a particular "social group." As the Government assured the court at oral argument, Duarte will be granted the same status as Guinac, as the spouse of an alien who is granted asylum, pursuant to 8 U.S.C. § 1158(b)(3)

determined to be a "refugee," within the meaning of section 101(a)(42)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42)(A). Refugee status is established in most instances by evidence that an alien is unable or unwilling to return to his home country because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 428, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Singh v. Ilchert,* 63 F.3d 1501, 1505 (9th Cir.1995).

■■■ An alien's well-founded fear of persecution must be both subjectively genuine and objectively reasonable. *See Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir.1998). An alien satisfies the subjective component by credibly testifying that he genuinely fears persecution. *Id.* The objective component can be established in two different ways. First, if an asylum applicant establishes that he has been subjected to persecution in the *past,* there is a presumption that a well-founded fear of future persecution exists. 8 C.F.R. § 208.13(b)(1)(i). The burden then shifts to the INS to show by a preponderance of the evidence that country conditions have changed to such an extent that the petitioner no longer has a well-founded fear that he would be persecuted if he were to return. *Id.* Second, an applicant can show a good reason to fear *future* persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution. *Ghaly v. INS,* 58 F.3d 1425, 1428 (9th Cir.1995). The applicant may make this showing either through the production of specific documentary evidence or by credi-

ble and persuasive testimony. *See Ramos–Vasquez v. INS,* 57 F.3d 857, 862–63 (9th Cir.1995).

■■■ The standard for withholding of deportation is a more stringent one than that for asylum eligibility; however, if the evidence demonstrates . a clear probability that the applicant would be persecuted were he to be deported to his home country, the Attorney General must withhold deportation. *See Korablina,* 158 F.3d at 1044–1045. That is, the applicant must demonstrate that it is "more likely than not" that he will be persecuted on account of one of the five enumerated factors were he to return. 8 C.F.R. § 208.16(b)(1). Some forms of past persecution trigger a legal presumption that the applicant has shown a clear probability of persecution, so as to entitle him to withholding of deportation. *See* 8 C.F.R. § 208.16(b)(2); *Vallecillo–Castillo v. INS,* 121 F.3d 1237, 1240 (9th Cir.1996). To rebut this presumption, the INS must show by a preponderance of the evidence that country conditions have so changed that it is no longer more likely than not that the applicant would be persecuted there. *Id.*

II. *Facts*

■■■ Guinac is a citizen of Guatemala and a member of the indigenous Quiche ethnic group. Quiches, like members of other indigenous groups in Guatemala are commonly referred to as "Indians." Guinac concedes deportability, but seeks asylum and withholding of deportation based on his experiences in the Guatemalan military. In support of his application for asylum, Guinac credibly testified[4] that after his forcible conscription into the Guatemalan army in July of 1994, he was frequently beaten and insulted by superior officers on account of his race.[5] During

---

**4.** The IJ explicitly accepted petitioner's testimony as true. The BIA made no express credibility finding. Under these circumstances, we must accept his testimony as true. *See Canjura–Flores,* 784 F.2d 885, 889 (9th Cir.1985).

**5.** Throughout this opinion, we use "race" to designate the ground on account of which

Guinac was persecuted. More precisely, he was persecuted on account of his "ethnicity," a category which falls somewhere between and within the protected grounds of "race" and "nationality." In using the term race, we follow the usage of this court, *see, e.g., Singh v. INS,* 94 F.3d 1353 (9th Cir.1996) (*"Singh II "*) (analyzing claim of persecution of Indo-

his military service, he was one of a group of six indigenous ("Indian") draftees who were regularly singled out for physical abuse and, while being beaten, were told by their lieutenant that they were a "bunch of chickens," "sons of bitches," and "traitors to the fatherland." In addition, Guinac's commander, Sergio Camargo, told Guinac that he and the other indigenous soldiers were a bunch of "Indian pigs." According to Guinac, the Spanish word for Indian (*indio*) is a derogatory term for an indigenous person, which implies worthlessness. Guinac testified that the beatings he suffered were not a punishment for something he did or failed to do, but were explicitly motivated by his indigenous status—that is, because he is an "Indian." After ten months of enduring such treatment, Guinac complained to his commander, Camargo, telling him that he could not stand the abuse of authority and the violent attacks. Camargo, in response, told Guinac that it was not his place to complain about how he was being treated and threatened Guinac with death were he to cause trouble or desert the military.

Finally, Guinac could not tolerate the mistreatment any longer; he deserted the military to escape the racially-motivated beatings and verbal abuse. He went into hiding with an uncle in a small town, Transfiguracion, composed primarily of indigenous people. For a period of nearly five months following Guinac's desertion, armed military men repeatedly came to his wife's house looking for him. The soldiers told his wife, Duarte, that they would kill her husband when they found him. When they failed to locate Guinac, the soldiers threatened to kill Duarte. Guinac and Duarte then fled Guatemala for the United States, out of fear for their lives.

### III. *The BIA's Decision and Our Holdings*

The BIA dismissed Guinac's appeal from the IJ's order after conducting a *de novo* review of the record and issuing a decision on the merits; accordingly, our review is limited to that decision. *See Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir.1996). We will reverse the BIA's determination that Guinac is not eligible for asylum or entitled to withholding of deportation only if, on the basis of the evidence in the record, a reasonable factfinder would be compelled to conclude that the requisite fear of persecution existed. *See INS·v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

In denying Guinac's application, the Board first stated that mandatory military service without more, even if against one's will, is not a ground for asylum. The BIA then held that the type of racially-motivated treatment Guinac testified to constituted discrimination rather than persecution, adding only that "there is no support for the contention that [he was] persecuted." Finally, the BIA stated that because Guinac did not show that his desertion constituted a demonstration of political opinion and that he would face torture or execution for his desertion, the requisite nexus between the suffering Guinac might face in the future and a statutorily protected ground did not exist.

Guinac does not assert that conscription alone suffices for a grant of asylum; accordingly, we do not consider the first ground relied on by the BIA for its decision. Further, we do not consider whether the BIA erred in finding that Guinac's fear of persecution on account of political opinion was not well-founded. Instead, we hold that the evidence compels the conclu-

Fijians by ethnic Fijians as on account of race). *See also* United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status, at 18, ¶¶ 68 & 74 (Geneva, 1979) ("Handbook") (defining race as "frequently ... entail[ing] membership of a specific social group of common descent forming a minority within a larger population" and nationality as "membership of an ethnic or linguistic group," and noting that the two terms may sometimes overlap). We choose to use "race" purely for consistency with past decisions of this court.

sion that Guinac has a well-founded fear of persecution on account of race.

■ It is undisputed that Guinac satisfied the *subjective* requirement of a well-founded fear; the IJ found his testimony that he feared persecution on account of race should he return to Guatemala to be credible. *See Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998) ("*Singh III* "). The critical issue we discuss, therefore, is whether Guinac established "past persecution" and thereby met the *objective* requirement.[6]

With respect to the question whether Guinac suffered past persecution on account of his race, the evidence in the record compels a contrary conclusion to that reached by the BIA. From the time he was conscripted into the Guatemalan military, petitioner Guinac witnessed and was the object of repeated beatings and severe verbal harassment by his Hispanic superiors. He was explicitly targeted for this oppression because he was an Indian, as his superiors made clear by combining the beatings with verbal insults referring to his indigenous status, e.g., "Indian pig." Guinac testified that while he was not alone in receiving these beatings, only he and the five other indigenous soldiers were subjected to such treatment. When Guinac vehemently complained to his superior officer regarding the race-based beatings, he was told that it was not his place to object and was warned against deserting. Guinac finally deserted, because he could not stand the beatings any longer. Shortly thereafter, Guinac fled Guatemala because of fear of summary execution based on his having deserted the military.

The BIA expressed sympathy for Guinac and stated that it does not condone the actions of the Guatemalan military, but found him ineligible for asylum because it interpreted the treatment he endured as "discrimination," not "persecution." The BIA's determination that Guinac's suffering did not rise to the lev-

el of persecution appears to be based on two reasons: first, that the harm Guinac suffered was of insufficient severity to constitute persecution, and second, that he had not submitted sufficient documentary evidence supporting his claim of racially-motivated persecution. Both of the BIA's reasons for holding that Guinac did not show that he was a victim of persecution are contrary to law.

IV. *Establishing Persecution*

A. *Discrimination vs. Persecution*

As to the BIA's first reason, this court has consistently defined persecution as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive" and conducted a fact-intensive analysis of specific claims of persecution. *See Korablina,* 158 F.3d at 1043; *see also Ghaly,* 58 F.3d at 1431. We have used the label "discrimination" for, e.g., "generalized economic disadvantage," *Raass v. INS,* 692 F.2d 596, 596 (9th Cir.1982), or where ethnic Fijians "threw rocks at [the house of a Fijian of Indian descent], damaged some of her property, burglarized her home on one occasion, and stole laundry, coconuts, and items from her garage." *Singh III,* 134 F.3d at 968–69. In contrast, we have consistently found persecution where, as here, the petitioner was physically harmed because of his race, religion, nationality, membership in a particular social group, or political opinion. *See, e.g., Borja v. INS,* 175 F.3d 732 (9th Cir. 1999) (en banc); *Korablina,* 158 F.3d 1038.

In *Korablina,* this court's most recent case distinguishing discrimination from persecution, we reversed the BIA's decision that the petitioner had experienced a serious form of discrimination on account of her Jewish heritage, but had not established persecution. 158 F.3d at 1044. Our holding that Korablina had, in fact, suf-

---

6. Because we conclude that Guinac suffered past persecution and that the INS failed to rebut the resulting presumption that he has a well-founded fear of future persecution, we

need not consider his alternative contention that his fear of future persecution was in and of itself sufficiently well-founded so as to meet the objective standard. *See* n. 7 *infra.*

fered persecution relied on the cumulative effect of several instances of violence and harassment directed toward the petitioner by Ukrainian ultra-nationalists. *Id.* Korablina testified that she witnessed repeated violent attacks and experienced one such attack herself, all of which were motivated by an ultra-nationalist hatred of Jews. *Id.* Like Guinac's experiences, Korablina's occurred in the context of widespread discrimination against individuals who possessed a particular "offensive" characteristic. This context strengthened, rather than weakened, her claim of persecution. *See also Singh II*, 94 F.3d at 1358 (BIA erred by disqualifying Singh from asylum eligibility merely because other Indo–Fijians were subject to the same discrimination, harassment, and violence).

In the case before us, Guinac's credible, uncontroverted testimony establishes that he was the specific target of repeated beatings coupled with explicit expressions of ethnic hatred—all because he was an "Indian." When Guinac tried to discuss with his commanding officer the violence that he both witnessed and experienced, in order to bring it to the attention of the "authorities," he was threatened with death and warned not to try to desert. No case or statute provides that physical harm and death threats rise only to the level of discrimination, and not persecution—quite the contrary. *See, e.g., Borja*, 175 F.3d at 736–37 (finding past persecution where petitioner suffered injury and death threat); *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997) (threats of violence and death sufficient to establish persecution). The suffering inflicted on Guinac because of his indigenous heritage was not simply a "minor disadvantage or trivial inconvenience." *Korablina*, 158 F.3d at 1045 (quoting *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir. 1969)). Rather, it "amounted to 'the infliction of suffering or harm upon [one] who differ[s] (in race, religion, or political opinion) in a way regarded as offensive'." *Id.* The conclusion that these incidents constitute persecution is further strengthened by the fact that the treatment was conducted by an arm of the Guatemalan government. In *Ghaly*, "private" discrimination by Moslems against Coptic Christians was held not to rise to the level of persecution because it was neither "condoned by the state nor the prevailing social norm." 58 F.3d at 1431. Here, however, it was members of the national military that repeatedly beat and verbally assaulted Guinac on account of his race. Under the controlling case law, Guinac clearly suffered persecution.

### B. *Documentary Evidence*

■ The Board's second reason was also contrary to law. In its decision, the BIA cites to reports in the administrative record regarding widespread racial discrimination against Indians in Guatemala, but apparently concludes that they fail to provide adequate support for Guinac's claim of persecution. We reject the BIA's analysis, because the purpose of country conditions evidence, such as the State Department Report and Profile submitted here, is not to corroborate specific acts of persecution (which can rarely be corroborated through documentation), but to provide information about the context in which the alleged persecution took place, in order that the factfinder may intelligently evaluate the petitioner's credibility. *See* 8 C.F.R. § 208.13(a) (the testimony of the applicant, if credible [in light of general conditions in the applicant's country of nationality or last habitual residence,] may be sufficient to sustain the burden of proof without corroboration). The BIA's own decisions, as well as the immigration regulations, make clear the proper role of country information in an asylum determination. *See, e.g., In re S–M–J–*, Interim Decision 3303, 1997 WL 80984 (BIA 1997) ("Where the record contains general country condition information, and an applicant's claim relies primarily on personal experiences not reasonably subject to verification, corroborating documentary evidence of the asylum applicant's particular experience is not required."). In the instant case, Guinac's testimony was wholly consistent with the information in the record about conditions in Guatemala. As the

BIA stated in its decision, the country conditions evidence shows that "Guatemala is a country in which governmental forces have committed serious human rights abuses." The specific events Guinac described are consistent with the information in the record regarding the general political and social turmoil in that country, and the particular abuse to which members of indigenous groups are subjected. *See* Committee on Foreign Relations and Foreign Affairs, 104th Cong., 2d Sess., *Country Reports on Human Rights Practices for 1995* 431 (Joint Comm. Print 1994).

We hold that the BIA's determination that the threats and beatings Guinac suffered on account of his race constituted merely discrimination and not persecution is not "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir.1995). Moreover, Guinac's undisputed and credible testimony regarding the physical and mental abuse he experienced is wholly consistent with the documentary evidence introduced by the INS and compels the conclusion that he was a victim of persecution.

### V. *Presumption of Well–Founded Fear of Future Persecution*

Because Guinac suffered past persecution on account of his race, he is entitled to a legal presumption that he possesses a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i); *Singh II*, 94 F.3d at 1360–61. In order to rebut this presumption, the INS must show by a preponderance of the evidence that country conditions have so changed that it is no longer more likely than not that Guinac would be persecuted there. *Id.* Because the BIA viewed Guinac's past treatment as discrimination rather than persecution, it did not accord him the presumption of a well-founded fear, or consider whether the country conditions evidence in the record rebutted that presumption.

The INS submitted the requisite country conditions information. It introduced into evidence the 1995 State Department Country Report and the State Department Profile for Guatemala for that year. Had the Board engaged in the "individualized analysis" of country conditions required by our case law, *see Osorio v. INS*, 99 F.3d 928, 933 (9th Cir.1996); *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1257 (9th Cir.1992), it would have been compelled to find that the INS' country conditions information fails totally to rebut the presumption that Guinac has a well-founded future fear of persecution. In fact, the INS' evidence, taken as a whole, supports, rather than controverts, Guinac's application for asylum. The Country Report describes major human rights violations committed by members of the army and specifically states that "[i]ndigenous people suffered most of the serious human rights abuses described." Likewise, the Profile, although it reports increased curbs on the Guatemalan armed forces "in the offing," also describes frequent claims of government-sponsored or condoned mistreatment of Indians. Because Guinac clearly established that he suffered past persecution and the INS failed to rebut the resulting presumption that he has a well-founded fear of future persecution, we hold that Guinac is statutorily eligible for asylum.[7]

---

7. Even without the presumption that Guinac had a well-founded fear of future persecution on account of race, the evidence in the record compels that conclusion: after protesting the beatings he and other Indian soldiers received on account of race, he was threatened with death by his commanding officer should he desert the military; he finally deserted in order to escape the racially-motivated violence against him; after his desertion, armed soldiers repeatedly searched for him and threatened to kill him; all in the well-documented context of extensive military abuses of the rights of indigenous people in Guatemala. In fact, the soldiers even threatened to kill his wife if they could not find him. Although the BIA suggests that Guinac merely fears *prosecution* for his desertion, rather than *persecution* on account of race, this is by no stretch of the imagination a case of simple desertion. Guinac clearly established that he would suffer disproportionately severe punishment for his desertion on account of his race, a statutorily protected ground. *See Ramos–Vasquez v. INS*, 57 F.3d 857, 863–64 (9th Cir.1995)

## VI. *Withholding of Deportation*

 Guinac's asylum application was also deemed an application for withholding of deportation. *See* 8 C.F.R. § 208.3(b). If Guinac has established a "clear probability of persecution," that is, that it is "more likely than not" that he would be persecuted if he returned to Guatemala, his deportation must be withheld. *See Ghaly,* 58 F.3d at 1425. Although the "clear probability" standard for withholding of deportation is more stringent than the "well-founded fear" standard for asylum, if a petitioner has suffered past persecution such that his life or freedom was threatened in his home country on account of a protected ground, he is presumed to be entitled to withholding of deportation. *See Vallecillo–Castillo,* 121 F.3d at 1240; 8 C.F.R. § .208.16(b)(2). A "key factor in finding evidence sufficient for withholding of deportation is whether harm or threats of harm were aimed against petitioner specifically." *Gonzales–Neyra v. INS,* 122 F.3d 1293, 1297 (9th Cir.1997). The physical harm and threats of harm Guinac suffered on account of his race create a presumption that he is entitled to withholding of deportation. To rebut this presumption, the INS must show by a preponderance of the evidence that country conditions have so changed that it is no longer more likely than not that the applicant would be persecuted there. *Vallecillo–Castillo,* 121 F.3d at 1240. As we have explained above, the INS' country conditions evidence supported rather than controverted Guinac's claim and thus does not serve to rebut the withholding presumption either.[8] Guinac's deportation must therefore be withheld.

## VII. *Conclusion*

We grant the petition for review and reverse the BIA's denial of Guinac's application for asylum and withholding of deportation. Because asylum is granted at the discretion of the Attorney General, we remand so that she may exercise her discretion. The application for withholding of deportation shall be granted.

PETITION FOR REVIEW GRANTED. REMANDED FOR FURTHER ACTION CONSISTENT WITH THIS OPINION.

---

(granting eligibility for asylum to alien who deserted the military because he could not bear to summarily execute other deserters and feared disproportionately severe punishment for this desertion).

8. In fact, the evidence in the record regarding Guinac's objective fear of future persecution is so strong that we would be compelled to hold him entitled to withholding of deportation, even without the presumption that he is entitled to such relief. *See* n. 7 *supra.*