**De Qing LIN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–73072.

Agency No. A76–865–550.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2003.

Decided Nov. 20, 2003.

Jisheng Li, Esq., Law Office of Jisheng Li, Honolulu, HI, for Petitioner.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Office of the District Counsel, Honolulu, HI, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Mark A. Walters, Margaret Taylor, Office of Immigration Litigation, Mary Jane Candaux, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before BROWNING, REINHARDT, and THOMAS, Circuit Judges.

MEMORANDUM *

Petitioner De Qing Lin, a native of China, appeals from the decision of the Board

* This disposition is not appropriate for publica-      tion and may not be cited to or by the courts

of Immigration Appeals ("BIA") denying his application for asylum and withholding of deportation based on an adverse credibility determination. Where, as here, the BIA affirms the Immigration Judge's ("IJ") decision without opinion, the court reviews the decision of the IJ as if it were the BIA's decision. *Cedano–Viera v. Ashcroft,* 324 F.3d 1062, 1063 n. 1 (9th Cir. 2003); *Al–Harbi v. INS,* 242 F.3d 882, 887–88 (9th Cir.2001).

Pursuant to section 101(a)(42)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42)(B), and the BIA's decision in *In re C–Y–Z,* 21 I. & N. Dec. 915, 918–20 (BIA 1997), Lin is automatically eligible for asylum if he can show that his wife was forced to undergo an abortion or sterilization procedure under China's one-child policy. *See also He v. Ashcroft,* 328 F.3d 593, 604 (9th Cir.2003) (finding petitioner eligible for asylum based on his wife's forced sterilization). The court reviews an IJ's adverse credibility finding "to see whether substantial evidence supports that conclusion and determine whether the reasoning employed by the IJ is fatally flawed." *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir. 1996).

### I.

■ After reviewing the record, we conclude that the IJ's two bases for making an adverse credibility finding regarding Lin's wife's forced abortion are not supported by substantial evidence but rather are based on impermissible speculation and faulty reasoning. First, the IJ provided no support for her conclusion that Lin "tailored" his testimony regarding his wife's forced abortion other than that the Country Reports recognize several incidents of forced abortion in China's Fujian Province. To affirm an adverse credibility decision on this basis would require the court to reach an absurd result, namely

that a petitioner whose claim was actually *corroborated* by a Country Report must be found ineligible for asylum.

Second, the IJ stated that she did "not find credible the 1995 incident of forced abortion" because she would have "imagine[d]" that after the forced abortion there would have been "some action" in 1996 during Lin's wife's second pregnancy. We conclude that the IJ's adverse credibility determination made on this basis is erroneous. The IJ misconstrues the record and assumes facts not in evidence, namely that the authorities knew that Lin's wife was pregnant in 1996. Lin testified that the authorities did not know about his wife's pregnancy until after the child's birth. Lin's account is supported by testimony that the IJ credited; once the authorities learned of the second child's birth, they fined him an "astronomical" amount. This testimony is, moreover, fully consistent with the Country Reports which state that Chinese authorities enforce the one child policy by using a variety of coercive means, including fines, sterilization, detention, and forced abortion.

The IJ also based her adverse credibility finding on impermissible conjecture about what she "imagine[d]" the Chinese Government would do under these circumstances. The IJ assumed that the Chinese authorities would have found out that Lin's wife was pregnant before she gave birth and immediately ordered an abortion. The Country and Congressional Subcommittee Reports introduced into evidence suggest, however, that the Chinese Government does not always learn of a pregnancy in time to prevent it and that the ability to enforce, and consistently and effectively investigate, violations of the one-child policy depends largely on local factors, such as resource allocation --- factors that could not have been known to the IJ. As noted, *supra,* these Reports also state

that the government uses different coercive measures, "such as forced abortion and sterilization, detention, and the destruction of property to enforce birth quotas." Because the IJ based her adverse credibility finding on a misreading of the record, unfounded speculation about the Chinese Government's capacity to investigate its own family planning policies, and a mistaken understanding that abortion would necessarily have been ordered had the government discovered Lin's 1996 pregnancy, we will not uphold it.** *See, e.g., Maini v. INS*, 212 F.3d 1167, 1175 (9th Cir.2000) (holding that an IJ's conclusions regarding the behavior of a persecutor based on conjecture and speculation cannot be a substitute for substantial evidence); *Abovian v. INS*, 219 F.3d 972, 979 (9th Cir.2000) (holding that where BIA's decision to reject petitioner's assertions as implausible appears to be solely a matter of conjecture, it cannot form the basis of an averse credibility finding).

For these reasons, we find that the IJ's adverse credibility finding regarding Lin's claim that his wife underwent a forced abortion procedure is unsupported by substantial evidence and that petitioner's testimony in this regard is, accordingly, credible. Therefore, Lin has conclusively established past persecution and eligibility for asylum. *He*, 328 F.3d at 604. Accordingly, for purposes of the asylum claim we need not reach the IJ's credibility findings that relate to Lin's other claims that might have supported this same relief.

We do, however, examine the additional credibility findings regarding Lin's claims that he was imprisoned twice and beaten for violations of the one-child policy because also they support Lin's request for

relief in the form of withholding of deportation.

## II.

■ The IJ found Lin's testimony as to the six month period of incarceration for not paying the fine imposed incredible because Lin "provided no testimony" regarding this period and had not "explained any instances of abuse or torture." Blame for any lack of testimony regarding this period of detention cannot fall on the petitioner. Lin answered the questions presented to him as directed by the IJ; neither the IJ nor the government posed any questions regarding the specifics of Lin's confinement during this period. To make a negative credibility finding solely because a petitioner did not provide a specific and detailed answer to a question never posed to him during the hearing is impermissible. *See, e.g., Qiu v. Ashcroft*, 329 F.3d 140, 152 n. 6 (2d Cir.2003) ("[I]f the INS or IJ has nagging doubts about an applicant's credibility due to the spareness of her testimony – a factor that the BIA, to date, appears not to have expressly recognized as a basis for a finding of incredibility – it would seem prudent for the INS or IJ to pose questions aimed at eliciting inconsistent or inherently implausible statements."). Further, Lin should not be faulted for the "spareness" of his testimony because the unreliability of the translation at his hearing significantly impeded his ability to fully explain his conditions of confinement (among other things). The interpreter's responses at the hearing on Lin's behalf are often almost incomprehensible, at times non-responsive, and delivered in a grammatically incoherent fashion. Where, as here,

---

** Although the IJ used the term "some action," the term can refer only to forced abortion or sterilization, as Lin was actually punished as a result of the pregnancy in question by an "astronomical" fine and, according to his testimony, was subsequently confined to a prison for six months.

Lin's ability to explain himself fully was hampered as a "result of mistranslation or miscommunication" and neither the IJ nor the government asked any questions about this period of detention, the lack of sufficient specific testimony is not a sufficient basis for an adverse credibility finding. *Abovian*, 219 F.3d at 979. Finally, the IJ faults Lin for not being able to provide stories of abuse during his six month period of detention. The fact that Lin did not offer such testimony, even when it was clear that it would likely have improved his chances of obtaining asylum, can provide no support for on an adverse credibility determination. To the contrary, it may strengthen the credibility of the evidence that Lin did provide.

### III.

■ The IJ found Lin's testimony that he was detained for one month in response to his challenge to the heavy fine imposed upon him after the birth of his second child not credible. The IJ stated that her adverse credibility determination was based on the fact that the Lin's "detention testimony" was not consistent with the Country Reports, which gave "no indication" that a family member "would be subject to long periods of detention in conjunction with an appeal of fines imposed for violations of the one child policy." First, the Country Reports are consistent with Lin's testimony. Contrary to the IJ's assertions, a close reading of the Country Reports shows: (1) that there is a procedure for individuals to appeal or complain about unfair fines; and (2) that detention is a method of pressure for violations of the one child family policy. Second, even assuming, *arguendo*, that Lin's claims conflicted with a Country Report, the IJ's adverse credibility finding cannot be based on this ground alone. *Shah v. INS*, 220 F.3d 1062, 1069 (9th Cir.2000). If the BIA deems a person to be not credible, it must do so on an individualized basis and "offer

a specific, cogent reason for any stated disbelief." *Id.* at 1069 (internal quotations and citations omitted). The IJ's reason for making an adverse credibility finding here, i.e. that she could not find in the Country Reports a specific instance of month-long detention in retaliation for an appeal of fines, is not an acceptable use of a Country Report. *Id.* at 1069–70. A finding made on this basis is in error.

Because the BIA did not consider whether Lin had met the more stringent requirements for withholding of deportation, we remand for the BIA to determine, in the first instance, whether there is a "clear probability" that Lin would be persecuted if returned to China. *He*, 328 F.3d at 604 (9th Cir.2003) (citing 8 C.F.R. § 208.16; *Duarte de Guinac v. INS*, 179 F.3d 1156, 1159 (9th Cir.1999)).

Accordingly, we GRANT THE PETITION IN PART and REMAND for further proceedings and an exercise of the Attorney General's discretion.