John Jairo QUINTERO; Bibiana Patricia Velez, Petitioners,

v.

Alberto R. GONZALES, Attorney General, Respondent.

No. 03–74362.

Agency Nos. A79–526–661, A79–526–662.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 2006.

Decided June 30, 2006.

Before MCKEOWN and BERZON, Circuit Judges, and KING * Senior Judge.

## MEMORANDUM **

John Quintero and his wife, Bibiana Patricia Velez,[1] natives and citizens of Colombia, petition for review of an order of the Board of Immigration Appeals ("BIA"), summarily affirming an immigration judge's ("IJ") decision to deny their applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). We dismiss in part and deny in part the petition for review.

We review for substantial evidence the determination that a petitioner has failed to establish eligibility for asylum or withholding of removal, and must uphold the IJ's findings unless the evidence "not only supports, but compels a contrary conclusion." *Karouni v. Gonzales,* 399 F.3d 1163, 1170 (9th Cir.2005); *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct.

---

\* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1.  Quintero is the principal asylum applicant; his wife's claim is derivative of his claim. *See* 8 U.S.C. § 1158(b)(3).

812, 117 L.Ed.2d 38 (1992). Where, as here, no explicit adverse credibility finding was made, "we must assume the applicant's factual contentions are true." *Navas v. INS*, 217 F.3d 646, 652 n. 3 (9th Cir.2000).

■■■ Substantial evidence supports the IJ's determination that Quintero failed to show he was persecuted "on account of" a protected ground, including membership in a particular social group and actual or imputed religion or political opinion.[2] *See* 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" as one who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution *on account of* race, religion, nationality, membership in a particular social group or political opinion.") (emphasis added); *see also In Re S–P*, 21 I. & N. Dec. 486, 489 (BIA 1996) (explaining that persecution for an actual or imputed protected ground can satisfy the definition of "refugee."). The IJ concluded that Satanic cult members persecuted Quintero—i.e., made threatening phone calls and kidnapped him—solely because he shed light on the cults' secret activities when producing a documentary series on paranormal activities. The IJ likened the Satanic cults' actions to that of an organized criminal enterprise seeking to silence and exact personal revenge on informants.

We recognize that "it is often difficult to determine the exact motive or motives for which harm has been inflicted," *In re S–P*, 21 I. & N. Dec. at 492, and an applicant may qualify for asylum where persecution occurred for multiple reasons, so long as the "harm was motivated, at least in part, by an actual or implied protected ground," *Borja v. INS*, 175 F.3d 732, 736 (9th Cir. 1999) (en banc). However, the evidence

Quintero presented does not *compel* a finding that his persecution was motivated, even in part, by an actual or imputed protected ground. *See Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812 (explaining that "since the statute makes motive critical," a petitioner seeking reversal must show that the direct or circumstantial evidence he presented "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution").

Even if Colombian journalists were a recognized social group, an issue we need not decide, the evidence does not compel a finding that Quintero was persecuted on account of his being a journalist. Instead, the evidence suggested that cult members targeted individuals spanning various professions and groups, such as the non-journalist "Deacon," whose unifying trait was that they exposed or interfered with the cults' secret practices.

Similarly, the evidence does not compel a finding that Quintero was persecuted on account of his actual or imputed political opinion. The evidence does not suggest that Satanic cult members were aware of Quintero's political views or that they imputed a particular political view to him. Even if the Satanic cults perceived Quintero as disliking them, a "purely apolitical feud between two hostile groups" does not constitute persecution on account of political opinion. *Marquez v. INS*, 105 F.3d 374, 381 (7th Cir.1997); *Jahed v. INS*, 356 F.3d 991, 999–1000 (9th Cir.2004) (distinguishing persecution on account of political opinion from persecution by "criminals with no interest in politics or political opinion").

Nor does the evidence compel a finding that Quintero was persecuted on account

---

**2.** Although petitioners' asylum applications were filed over a year after they entered the United States, the IJ concluded that they satisfied an exception to the one-year filing rule,

8 C.F.R. § 208.4(a)(2), because they were led to believe their applications were timely filed by a man who falsely represented himself to be an attorney.

of his actual religion, Catholicism, or imputed religion. The persecution must be on account of the *victim's* actual or imputed religion, and not the persecutor's religion, and "the mere existence of a generalized [religious] motive" underlying the persecutor's activities is inadequate to establish the requisite nexus. *Elias–Zacarias*, 502 U.S. at 482, 112 S.Ct. 812 (explaining that "if a fundamentalist Moslem regime persecutes democrats, it is not engaging in persecution on account of religion"). In 1996, Quintero began volunteer work with the Catholic church in Soacha to help steer susceptible youth away from joining Satanic cults. The cults were aware of his church affiliation; however, Quintero only began receiving threatening phone calls during the production of the documentary series in 1998, and his kidnapping occurred after the series aired in 1999. This temporal sequence does not compel the conclusion that Quintero's religious affiliation motivated the persecution. *Cf. Borja*, 175 F.3d at 736 (holding that the evidence compelled finding nexus where persecutors "immediately react[ed]" to petitioner's statement of political opposition with violence). The threatening calls and kidnapping were not "coupled with explicit expressions of [religious] hatred" that would compel a finding that Quintero's religion or imputed religion motivated the persecution. *Maini v. INS*, 212 F.3d 1167, 1176 (9th Cir.2000) (quoting *Duarte de Guinac v. INS*, 179 F.3d 1156, 1162 (9th Cir.1999)). Quintero claims he has set forth a "plausible basis" that the cults persecuted him because they viewed him as having a religious opinion opposite to their own. However, the Supreme Court has emphasized that it is "[q]uite beside the point" whether the record is "adequate to *support*" such a conclusion. *Elias–Zacarias*, 502 U.S. at 481 n. 1, 112 S.Ct. 812. "On this record, it is equally likely," if not more likely, that the Satanic cults "acted for other reasons"—i.e., out of personal revenge for exposing their secret practices and out of a protective self-interest to silence him—and thus, the evidence does not compel us to reverse the IJ's determination with respect to asylum or withholding of removal. *Sangha v. INS*, 103 F.3d 1482, 1490–91 (9th Cir.1997).

We lack jurisdiction to address Quintero's claim for relief under the CAT because he failed to raise that issue on appeal to the BIA. *See Garcia–Martinez v. Ashcroft*, 371 F.3d 1066, 1079 n. 5 (9th Cir.2004). Quintero's due process claim that he was entitled to a three-judge BIA panel is foreclosed by *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 848 (9th Cir.2003).

PETITION FOR REVIEW DISMISSED in part; DENIED in part.