**U Pho MYINT, Petitioner,**

v.

**Michael B. MUKASEY \*, United States Attorney General, Respondent.**

No. 04–72416.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 9, 2007.\*\*

Filed Nov. 28, 2007.

U Pho Myint, San Jose, CA, pro se.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Jamie M. Dowd, U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: NOONAN and McKEOWN, Circuit Judges, and KORMAN \*\*\*, Senior Judge.

---

\* Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

\*\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

\*\*\* The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

MEMORANDUM ****

UPho Myint ("Myint") challenges the Immigration Judge's ("IJ") holding, and the Board of Immigration Appeals' ("BIA") subsequent affirmance, that Myint failed to demonstrate statutory eligibility for asylum based on either past or future persecution, withholding of removal, and relief under the Convention Against Torture ("CAT").

Because the BIA summarily affirmed the IJ's decision, we review the IJ's decision as the final agency determination. *Nuru v. Gonzales,* 404 F.3d 1207, 1215 (9th Cir.2005). An IJ's interpretation of legal questions is reviewed *de novo. Id.* Factual findings are reviewed for substantial evidence. *Id.* "To reverse the IJ's finding, we 'must find that the evidence not only supports that conclusion, but compels it[.]' " *Nahrvani v. Gonzales,* 399 F.3d 1148, 1151 (9th Cir.2005) (quoting *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

The IJ's determination that Myint did not suffer past persecution is supported by substantial evidence. Myint is a citizen of Myanmar, formerly known as Burma, who, until his departure to the United States in 1992, lived in a region where the ethnic rebel group, the Karen, operated. From 1987 until 1992, Myint was a fisherman. During that time, armed Karen rebels repeatedly boarded his vessel and harassed him. The Burmese Navy, patrolling the waters searching for rebel activity, questioned Myint on a number of occasions. Fearing both the Karen and the Burmese Navy, Myint traveled to the United States in 1992.

Because the actions taken against him were not on account of his actual or an imputed political opinion, *see I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Gormley v. Ashcroft,* 364 F.3d 1172 (9th Cir.2004); *Singh v. Ilchert,* 63 F.3d 1501 (9th Cir. 1995), he is not eligible for asylum based on past-persecution. Nor has he established a well-founded fear of future persecution. *See Duarte de Guinac v. I.N.S.,* 179 F.3d 1156, 1159 (9th Cir.1999) ("[A]n applicant can show a good reason to fear *future* persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution."). Because Myint cannot meet the lower standard for asylum eligibility, he necessarily fails to meet the higher standard for withholding of removal. *See Prasad v. INS,* 47 F.3d 336, 340 (9th Cir.1995); *Kazlauskas v. I.N.S.,* 46 F.3d 902, 907 (9th Cir.1995) ("An applicant only qualifies for a withholding of deportation if he shows a 'clear probability of persecution' upon return to his country of origin." (citations omitted)). As to his eligibility under the CAT, Myint has not demonstrated that it is more likely than not that he would be tortured if returned to Myanmar. *See Hamoui v. Ashcroft,* 389 F.3d 821, 827 (9th Cir.2004); 8 C.F.R. § 208.16(c)(2).

We have not overlooked the fact that human rights violations in Myanmar have risen recently to crisis level. An article in the current issue of *Foreign Affairs* described the recent history of Myanmar as follows:

> [I]n 1992, repression grew more brazen. Thousands of democracy activists and ordinary citizens have been sent to prison, and [the leader of the National League for Democracy] has been repeatedly confined to house arrest, where

---

**** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

she remains today. Since 1996, when the Burmese army launched its "four cuts" strategy against armed rebels—an effort to cut off their access to food, funds, intelligence, and recruits among the population—2,500 villages have been destroyed and over one million people ... have been displaced. Hundreds of thousands live in hiding or in open exile.... In 2004, the reformist prime minister Khin Nyunt was arrested.... And this past summer, the government cracked down brutally on scores of Burmese citizens who had taken to the streets to protest state-ordered hikes in fuel prices.

. . .

Western intelligence officials have suspected for several years that the regime has had an interest in following the model of North Korea and achieving military autarky.... [D]espite urgent problems elsewhere in the world, all responsible members of the international community should be concerned about the course Burma is taking.

Michael Green & Derek Mitchell, *Asia's Forgotten Crisis: A New Approach to Burma,* Foreign Affairs, Nov./Dec.2007, available at www.foreignaffairs.org. In September of 2007, President George W. Bush announced that tighter sanctions will be imposed on the country for its human rights violations. Press Release, The White House President George W. Bush, Fact Sheet: Burma: Calling for Human Dignity and Democracy (Sept. 25, 2007); *see also* Maggie Farley, *Burma Bending Slightly, U.N. is Told,* L.A. Times, Nov. 14, 2007, at 3; Thomas Fuller, *U.N. Envoy in Myanmar to Try to Tally Dead,* N.Y. Times, Nov. 12, 2007, at A6.

We have held that general deterioration of a country's condition does not support granting asylum where the applicant does not otherwise meet the requirements for such. *See Lolong v. Gonzales,* 484 F.3d 1173 (9th Cir.2007); *Martinez–Romero v. I.N.S.,* 692 F.2d 595, 595–96 (9th Cir.1982) ("If we ... agree[d] ... that no person should be returned to El Salvador because of the reported anarchy present there now, it would permit the whole population, if they could enter this country some way, to stay here indefinitely. There must be some special circumstances present before relief can be granted."). Nevertheless, we urge the United States Citizenship and Immigration Services to exercise its discretion and stay Myint's deportation until the situation in Myanmar significantly improves.

PETITION DENIED.