Vahan **STEPANYAN**, Petitioner,

v.

Michael B. **MUKASEY**, Attorney General, Respondent.

No. 06–72885.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 2008.

Filed April 14, 2008.

Troy A. Baker, Las Vegas, NV, for Petitioner.

NVL–District Counsel, Office of the District Counsel Department of Homeland Security, Las Vegas, NV, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Oil, U.S. Department of Justice Civil Div./Office of Immigration Lit., Marie–Flore V. Kouame, U.S. Department of Justice Criminal Division, Washington, D.C., for Respondent.

Before: HAWKINS, THOMAS, and CLIFTON, Circuit Judges.

### MEMORANDUM *

Vahan Stepanyan ("Stepanyan"), a native and citizen of Armenia, seeks review of the Board of Immigration Appeals' ("BIA") decision upholding the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Because the BIA committed significant factual and legal errors in the course of its asylum analysis, we grant Stepanyan's petition in part, and remand the case for further proceedings.

The IJ found that Stepanyan testified credibly about the abuse he suffered at the hands of the Armenian National Security Service ("NSS"), and determined that he had experienced past persecution on account of his political opinion. The BIA affirmed these findings. Under the regulations governing asylum, this entitled Stepanyan to a presumption that he had a well-founded fear of persecution should he return to Armenia. 8 C.F.R. § 1208.13(b)(1).

The BIA held that the Department of Homeland Security successfully rebutted this presumption for two reasons: (1) Stepanyan unreasonably believed that a stolen car that crashed into his store in Armenia involved an NSS threat, and (2) the Armenian political landscape had changed such that persecution would be unlikely to reoccur should Stepanyan return.

### A. The Car Crash

An alien's well-founded fear of persecution must be "both subjectively genuine and objectively reasonable." *Rodas–Mendoza v. INS,* 246 F.3d 1237, 1239 (9th Cir.2001) (per curiam) (internal quotation marks omitted). "An alien satisfies the subjective component by credibly testifying that he genuinely fears persecution." *Duarte de Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999). "One way in which he may satisfy the objective component is to demonstrate past persecution, which triggers a rebuttable presumption of a well-founded fear of future persecution." *Gui v. INS,* 280 F.3d 1217, 1228 (9th Cir.2002).

■ By finding that Stepanyan had suffered past persecution, he was presumed to have an *objectively* reasonable, well-founded fear of future persecution. His intention to leave the United States and return to Armenia has no bearing on this *objective* component of the analysis. Instead, it goes to whether or not his fear is *subjectively* genuine. *See, e.g., Zhou v. Gonzales,* 437 F.3d 860, 867 (9th Cir.2006) (stating that testimony of fear of arrest and incarceration if returned to native country establishes subjective component of well-founded fear analysis).

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

The BIA conflated the two analyses. Whether Stepanyan's fear was subjectively genuine when he originally left Armenia is irrelevant because his testimony establishes that he did (and does) harbor a genuine fear after the car accident. The only remaining question is whether the fear of future persecution remained objectively reasonable. If the car accident was, as the IJ found, simply "an unknown person's misadventure," it could not possibly have *lowered* the risk of future persecution. Essentially, the BIA held that an alien's willingness to return to an environment that is indisputably persecutory is a "fundamental change in circumstances" within the meaning of 8 C.F.R. § 1208.13(b)(1)(i)(A). This is clearly wrong.[1]

## B. Stepanyan's Political Activities

■ The BIA mentioned multiple reasons to support its conclusion that the political landscape had fundamentally changed since the time of Stepanyan's participation: Karen Demirchyan, "the political figure with whom he was associated through his wife's employment[,] is no longer a significant political figure in Armenia"; the party he supported merged with another party and the resulting entity has since dissolved; and his "political opinions focused almost exclusively on events related to the parliamentary elections in the summer of 1999, now some 7 years ago, in which [his] political allies prevailed." The record supports none of these assertions.

The BIA's description of Karen Demirchyan as "no longer . . . significant" is, in a literal sense, accurate, but only because he was *assassinated* in 1999. When considering whether a country is safe for persons with certain political views, we think the distinction between "no longer significant" and "murdered because of his politics" is one that the BIA should make explicit.

The BIA most likely confused Karen Demirchyan with his son, Stepan. Although Stepanyan, for whatever reason, stated that Stepan was unharmed because "[h]e doesn't mean anything as a political figure," the record establishes that Stepan is one of the country's primary opposition leaders. According to a report prepared by the Department of State, Stepan Demirchyan received nearly a third of the vote in a 2003 runoff presidential election against the incumbent president. He is also, according to Stepanyan, the current leader of the People's Party—the party that his father led and the one Stepanyan actively participated in at the time of his persecution. The BIA suggests that the People's Party's merger led to its extinction. The record clearly establishes, however, that the People's Party is still active, and that Stepanyan remains formally enrolled. Department of State reports also make clear, sadly, that the controlling party continues to use law enforcement resources to commit human rights abuses against political opponents.

Given the ongoing vitality of Stepanyan's party and his ties to its current leader,[2] there is no reason to surmise that Stepanyan will not resume his former po-

---

1. This is not a case where Stepanyan's subjective fear is wholly unrelated to the objective likelihood of future persecution. It was not as though he was no longer afraid of the NSS or the political party that had been oppressing him, and was instead afraid to return to Armenia because he thought that the car crash indicated that some wholly new set of actors were trying to persecute him. Stepanyan continues to fear his prior persecutors, to whom he ascribes the car incident.

2. Stepanyan and Stepan attended the same school, and they have been photographed together.

litical activities if removed to Armenia, or that the authorities will no longer be interested in persecuting him. While his activism did not continue past the parliamentary elections of 1999, there is a simple explanation for this: Stepanyan had moved to America. Given that authorities continued to search for him after he came to America and after the elections of 1999, it seems the BIA relied only on the passage of time to rebut the presumption of future persecution. We have held that this sort of speculation is impermissible. *Salazar–Paucar v. INS,* 281 F.3d 1069, 1077 (9th Cir.2002).

## C. Disposition

The BIA committed legal and factual errors, and we think that its affirmation of the IJ's asylum ruling is unsupported by substantial evidence. The BIA rejected Stepanyan's application for withholding of removal because it found that he failed to meet the eligibility requirements for asylum. Accordingly, we also find that the BIA's withholding of removal decision is unsupported by substantial evidence.

Although Stepanyan argued before the BIA that he was entitled to humanitarian asylum under *Matter of Chen,* 20 I. & N. Dec. 16 (BIA 1989), the BIA did not address this claim. We therefore express no opinion on that issue.

Finally, we find that substantial evidence supports the BIA's rejection of Stepanyan's CAT application.

For the foregoing reasons, we **GRANT** the petition in part, **DENY** the petition in part, and **REMAND** to the BIA with instructions to reconsider Stepanyan's asylum and withholding of removal claims.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

Costs on appeal are awarded to Petitioner. Petitioner shall file a timely cost bill per Fed. R.App. P. 39(d).