FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 18 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YUANKU LI, | No. 11-70473 |
| Petitioner, | Agency No. A099-456-725 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 14, 2014
San Francisco, California

Before: FARRIS, TASHIMA, and McKEOWN, Circuit Judges.

Yuanku Li petitions for review of the removal order entered against him by

the Board of Immigration Appeals. We have jurisdiction over the petition under 8

U.S.C. § 1252(a) and affirm the BIA's removal order. The BIA and IJ's

determinations of legal questions are reviewed *de novo*. *Ali v. Holder*, 637 F.3d

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1025, 1028 (9th Cir. 2011). Their factual findings are reviewed for substantial evidence. *Id.* at 1028-29. Under the substantial evidence standard, "we may not reverse unless we determine that any reasonable factfinder would have been compelled to reach that conclusion." *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (en banc).

At the time of Li's application, spouses of women forced to undergo abortion were automatically eligible for asylum. *See In re C-YZ-*, 21 I. & N. Dec. 915 (BIA 1997). Two years after the filing of the application, the Attorney General issued an opinion that held spouses were no longer entitled to automatic eligibility. *Matter of J-S-*, 24 I. & N. Dec. 520 (BIA 2008). Li argues that the retroactive application of the Attorney General's opinion is unwarranted.

Retroactive application of an administrative rule change made through adjudication is determined on a case-by-case basis according to five factors: "'(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.'"

*Garfias-Rodriguez*, 702 F.3d 504, 518 (9th Cir. 2012) (quoting *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982)).

The first factor exerts little weight here as its focus on issues of first impression "may not be as well suited to the context of immigration law, where one of the parties will always be the government." *Garfias-Rodriguez*, 702 F.3d at 521. The second and third factors are linked. "If a new rule 'represents an abrupt departure from well established practice,' a party's reliance on the prior rule is likely to be reasonable." *Id.* (quoting *Retail, Wholesale & Dep't Store Union, AFL-CIO v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972)). However, "these two factors will favor retroactivity if a party could reasonably have anticipated the change in the law such that the new 'requirement would not be a complete surprise.'"*Id.* (quoting *Montgomery Ward*, 691 F.2d at 1333–34).

The Attorney General's opinion in *Matter of J-S-* did not represent an abrupt departure as the law on this issue had been in a period of flux. Before Li filed his asylum application, both the Second and Third Circuits had questioned the BIA's interpretation of the statute. *Lin v. U.S. Dep't of Justice*, 416 F.3d 184, 191 (2d Cir. 2005); *Chen v. Ashcroft*, 381 F.3d 221, 226 (3d Cir. 2004). An en banc panel of the BIA had then affirmed its earlier decision in a majority opinion. *Matter of S-L-L-*, 24 I. & N. Dec. 1 (BIA 2006). The Attorney General's opinion stated that he had taken

3

the case "in order to provide a final administrative ruling on a statutory question that has divided the Federal courts of appeals." *Matter of J-S-*, 24 I. & N. Dec. 520. This interpretative history indicates that the change could have been reasonably anticipated. Li also did not incur significant detrimental reliance on the previous rule as he received an opportunity to correct any omissions in his application at the beginning of his hearing before the IJ. Li presents no other evidence of detrimental reliance on the previous rulings of the BIA. These two factors weigh in favor of the government as the change in law should not have come as a complete surprise and Li did not suffer significant damage through detrimental reliance on the existing precedent.

The fourth factor heavily weighs in favor of Li, as deportation is "a substantial burden that weighs against retroactive application of an agency adjudication." *Garfias-Rodriguez*, 702 F.3d at 523 (internal quotation marks omitted). The fifth factor weighs in favor of the government as "non-retroactivity impairs the uniformity of a statutory scheme, and the importance of uniformity in immigration law is well established." *Id.* Overall, a clear majority of the relevant factors weigh in favor of the government. Retroactive application of *Matter of J-S-* to Li's application is warranted.

Li argues that the IJ and BIA committed legal error by failing to consider evidence of Mrs. Liu's forced abortion and the threatened sterilization of Li during its determination of whether Li had suffered past persecution. The IJ and the BIA "are

4

not free to ignore arguments raised by a petitioner." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005). They are not, however, required to "write an exegesis on every contention." *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (quoting *Lopez v. Ashcroft*, 366 F.3d 799, 807 n. 6 (9th Cir.2004)). The BIA's opinion shows that it considered the evidence of Mrs. Liu's forced abortion. The BIA noted that Mrs. Liu's abortion was "proof of persecution to [Li]" but found that under a totality of the circumstances, this evidence was not sufficient to constitute past persecution. The BIA did not specifically mention that Li was threatened with sterilization, but it did note that he was not arrested or detained for any substantial period of time. In fact, Li's encounter with the authorities was limited to a single day and a single threat. A reasonable factfinder could conclude that Li did not suffer past persecution. The BIA did not commit legal error as its opinion shows that it reviewed the evidence of past persecution that Li presented but rejected it as insufficient.

Li argues that substantial evidence does not support the BIA's determination that Li had not established an objectively reasonable fear of future persecution. To establish a well-founded fear of future persecution, an asylum applicant must show that his or her fear is "both subjectively genuine and objectively reasonable." *Sael v. Ashcroft*, 386 F.3d 922, 924 (9th Cir. 2004). The objective requirement can be fulfilled "either through the production of specific documentary evidence or by

credible and persuasive testimony." *Duarte de Guinac v. INS*, 179 F.3d 1156, 1159 (9th Cir. 1999). A totality of the circumstances test is used to determine whether a well founded fear of future persecution exists. *Ahmed*, 504 F.3d at 1191.

Li's claim of a well founded fear of future persecution rested on his testimony. The IJ determined that Li's testimony on his objectively reasonable fear of future persecution was not credible. Under the REAL ID Act, the IJ may consider any relevant factor, including inconsistencies and omissions, in determining whether an applicant's testimony is credible. *Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010). The IJ must "provide specific and cogent reasons in support of an adverse credibility determination." *Id* at 1044. The IJ emphasized several specific reasons for the adverse credibility finding. First, Li had not mentioned his period of hiding in the furniture factory in his initial application and had not corrected his application when given the opportunity to do so. Second, Li was able to obtain a passport while he was allegedly in hiding. Third, Li's parents had not faced repercussions unlike the families of other Chinese dissidents. Under the REAL ID Act, these inconsistencies are significant enough to justify an adverse credibility determination. The first two inconsistencies are directly relevant to determining whether the Chinese authorities continued to pursue Li after his brief detention. Once Li's testimony is discounted due to the adverse credibility determination, there is insufficient evidence in the record to

6

compel the conclusion that Li possesses an objectively reasonable fear of future persecution.

In order to qualify for withholding of removal, an asylum applicant must establish that "it is more likely than not that the alien will be persecuted if deported." *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996). This test is more demanding than the asylum eligibility one. Therefore, an asylum applicant's failure to establish asylum eligibility "necessarily results in a failure to demonstrate eligibility for withholding of deportation as well." *Id.* Li has failed to establish asylum eligibility and thus has also failed to qualify for withholding of removal.

Li argues that he qualifies for relief under the Convention Against Torture as he is more likely than not to be tortured if he is returned to China. Evidence of past torture is a critical factor for relief under CAT. *See Edu v. Holder*, 624 F.3d 1137, 1145 (9th Cir. 2010). Substantial evidence supported the BIA's conclusion that Li had not experienced past persecution. This factor does not favor Li's claim for relief under CAT. In addition, the 2007 U.S. State Department Country Conditions report on China notes that there are "sporadic reports of violations of citizens' rights by local officials" but also states that the Chinese national government has instructed local officials to resolve disputes peacefully and to protect citizens' rights. This evidence does not indicate that Li is more likely than not to be tortured if he is returned to

China. A reasonable factfinder could therefore conclude that it was not likely that Li would be tortured if he was returned to China.

**Petition for review DENIED.**