Konstantin MALKHASYAN, Emilya Malkhasyan, Petitioners,

v.

Michael B. MUKASEY, Attorney General, Respondent.

No. 04–73579.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 2008.

Filed June 9, 2008.

754

Reynold E. Finnegan, Finnegan & Diba A. Law Corporation, Los Angeles, CA, for Petitioners.

Mary Jane Candaux, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, NVL–District Counsel, Office of the District Counsel, Department of Homeland Security, Las Vegas, NV, OIL, Julie Pfluger, for Respondent.

Before: TROTT and THOMAS, Circuit Judges, and HOGAN,* District Judge.

## MEMORANDUM **

Petitioner Konstantin Malkhasyan, an ethnic Armenian born in Georgia, petitions for review of a Board of Immigration Appeals' ("BIA") decision denying his application for asylum. Petitioner Emilya Malkhasyan, Konstantin's wife, is claiming asylum as a derivative beneficiary.

The BIA upheld the Immigration Judge's (IJ) decision that Petitioners failed to establish past persecution in either Georgia or Armenia or demonstrate a well-founded fear of future persecution on a protected ground. The BIA, instead, concluded that the serious problems faced by Petitioners were the result of conditions of general violence and civil unrest and determined that Petitioners were only subject to random acts of violence.[1] Petitioners established past persecution and accordingly, a remand is necessary for a determination regarding changed circumstances.

The IJ accepted Petitioner Konstantin Malkhasyan's testimony which established several incidents of ethnically or politically motivated beatings. In 1994, in Georgia, the police demanded that he leave and requested that he sign papers agreeing to leave the country "because Georgia is supposed to be for Georgians." Petitioner's refusal to sign the paper resulted in a beating. The police required Petitioner to take off his clothes, put him in handcuffs and attached him to the wall and left him alone for hours.

In January of 1996, in Georgia, a group of masked armed men in camouflaged uniforms broke into Petitioners' apartment. The men stated that they had warned Petitioner Konstantin Malkhasyan to leave, beat him and threw his wife against the wall. They further warned Malkhasyan that if he did not leave, they would destroy him.

In 1996, Petitioners visited the United States while hoping things would improve in Armenia and Georgia. Petitioners returned to Georgia through Armenia in 1997. Petitioner's original intent was to return to Armenia. But, at the airport in Armenia, Petitioner and his wife were held for about 14 hours and a customs person took their Armenian passports.[2] Petitioner Konstantin Malkhasyan believes that the incident at the airport resulted from his activities for a refugee commission in Armenia in the late 1980's where he "dis-

---

* The Honorable Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation.

** This disposition is not appropriate for publication and may not be cited except as provided by Ninth Circuit Rule 36–3.

1. Just prior to oral argument, the government raised the contention that Petitioners failed to exhaust their administrative remedies. However, where the BIA has considered a claim on the merits, a Petitioner has exhausted his administrative remedies and the court has jurisdiction over the claim. *See Socop–Gonzalez v. I.N.S.,* 272 F.3d 1176, 1186 (9th Cir. 2001).

2. Petitioner had to "buy" the passports back in 1999.

covered bad things" and ended up black-listed. Petitioner then returned to Georgia.

In April of 1997, four men wearing police uniforms asked Petitioner Konstantin Malkhasyan why he was still in Georgia. When Petitioner informed them that he had no place to go, the men beat him with their weapons. Shortly thereafter, Petitioner and his wife went to Armenia to stay with a friend connected to the opposition party in Armenia, Karan Demirchian.

Demirchian used a report, prepared by Petitioner Konstantin Malkhasyan, in a speech at parliament in 1998 about abuses regarding supplies for refugees in about 1991. Petitioner indicated that Demirchian and his party sought to fight corruption and in October of 1999, a shooting at the parliament resulted in Demirchian's death. Petitioner stated he was on a blacklist because of his association with Demirchian and because he acted out against corruption.

On March 25, 2000, three people with the government took Petitioner to the Ministry of Internal Affairs where he was asked about Demirchian's party's plans for the future. Petitioner was asked to deny what he put in his report for Demirchian's speech and when he refused he was taken to the basement and severely beaten.

To prevail on an asylum claim, Petitioners must show that the evidence not only supports, but compels the conclusion that the asylum decision was incorrect. *See Cordon–Garcia v. I.N.S.*, 204 F.3d 985, 990 (9th Cir.2000). To establish eligibility for asylum, Petitioners must prove that they are "refugees." *See id.* A refugee is an alien who is unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Persecution" is defined

as " 'the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive.' " *Cordon–Garcia*, 204 F.3d at 991 (quoting *Singh v. I.N.S.*, 134 F.3d 962, 967 (9th Cir.1998)).

To establish a well-founded fear of persecution, an applicant must demonstrate both a subjective and an objective fear of persecution. *See Mejia–Paiz v. I.N.S.*, 111 F.3d 720, 723 (9th Cir.1997). An applicant can satisfy the subjective component by credibly testifying that he genuinely fears persecution. *See id.* An applicant can satisfy the objective component in two ways. *See Ladha v. I.N.S.*, 215 F.3d 889, 897 (9th Cir.2000). The first way is to prove persecution in the past, giving rise to a rebuttable presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1) (2000). The second way is to " 'show a good reason to fear future persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution.' " *Ladha*, 215 F.3d at 897 (quoting *Duarte de Guinac v. I.N.S.*, 179 F.3d 1156, 1159 (9th Cir.1999)).

The IJ and BIA determined that Petitioners suffered as a result of general conditions of violence and civil unrest. Mere generalized lawlessness and violence between diverse populations is insufficient to justify asylum. *See Singh*, 134 F.3d at 967. However, Petitioner Konstantin Malkhasyan's testimony established that Georgia did, at least for a time, institute a "Georgians first" policy. The beatings, some at the hands of the police, were not the result of general lawlessness, but were connected to Petitioner's Armenian ethnicity.

Furthermore, the incidents in Armenia compel the conclusion that Petitioner Konstantin Malkhasyan suffered harm because of his political opinion. Accordingly, Peti-

tioners have demonstrated past persecution in both Georgia and Armenia.

As noted, once a Petitioner demonstrates past persecution, he is entitled to a presumption of a well-founded fear of future persecution. *See Korablina v. I.N.S.*, 158 F.3d 1038, 1043 (9th Cir.1998). The government must then rebut that presumption by demonstrating, by a preponderance of the evidence, a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution. *See* 8 C.F.R. § 208.13(b)(1). In order to meet its burden, the government must "introduce evidence that, on an individualized basis, rebuts a particular applicant's specific grounds for his well-founded fear of future persecution." *Popova v. I.N.S.*, 273 F.3d 1251, 1259 (9th Cir.2001) (internal quotation marks omitted). Because substantial evidence compels a finding of past persecution on the basis of political opinion and ethnicity, we must remand to give the government an opportunity to rebut this presumption. *See I.N.S. v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

**Petition for Review GRANTED in part and REMANDED.**

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.