**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 22 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANTHONY SANCHEZ-MIRANDA, AKA Anthony Miranda-Sanchez, | No. 17-73065 |
| Petitioner, | Agency No. A092-510-770 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM* |
| Respondent. | |

| | |
|---|---|
| ANTHONY SANCHEZ-MIRANDA, AKA Anthony Miranda-Sanchez, | No. 18-71743 |
| Petitioner, | Agency No. A092-510-770 |
| v. | |
| WILLIAM P. BARR, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 17, 2019**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Seattle, Washington

Before: O'SCANNLAIN, KLEINFELD, and FRIEDLAND, Circuit Judges.

In these consolidated petitions for review, Anthony Sanchez-Miranda ("Sanchez") petitions for review of orders by the Board of Immigration Appeals ("BIA") denying his motions to reopen and sua sponte reopen under case number 17-73065 ("Reopening Proceedings") and denying his requests for withholding of removal or relief under the Convention Against Torture ("CAT") in his reinstated removal proceedings under case number 18-71743 ("Reinstatement Proceedings"). Sanchez also argues that his reinstatement order is invalid in the Reinstatement Proceedings. We deny the petitions and hold that Sanchez has forfeited any independent challenge to the reinstatement order.

1. Reopening Proceedings

We review for abuse of discretion the denial of a motion to reopen, asking whether the BIA acted "arbitrarily, irrationally, or contrary to the law" and "fail[e]d to provide a reasoned explanation for its actions." *Tadevosyan v. Holder*, 743 F.3d 1250, 1252-53 (9th Cir. 2014) (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)). Denials of sua sponte motions to reopen, however, may only be reviewed to the extent that the BIA relied on an incorrect legal or

---

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

2

constitutional premise in deciding whether there were "exceptional circumstances" warranting reopening. *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016).

First, Sanchez acknowledges that his motion to reopen is over two decades late, *see* 8 U.S.C. § 1229a(c)(7)(C)(i); *see also* Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900-01 (Apr. 29, 1996), but he argues that the untimeliness is not fatal to his motion to reopen because he is entitled to equitable tolling. The BIA did not abuse its discretion in rejecting this argument based on Sanchez's lack of diligence. Dating back to 1992, Sanchez knew his criminal attorney had erred by telling him he would not be deported, which should have led him to take "reasonable steps to investigate the suspected fraud or error" sometime during the twenty-five years after he returned to the United States. *See Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011). And even if Sanchez may not have definitively learned of the precise grounds for relief from his state court conviction until he was placed back in deportation proceedings in 2016, the argument was clearly available to him for well over a year before that.[1]

---

[1] The BIA also did not engage in improper fact-finding in reaching the conclusion that Sanchez had not exercised due diligence, even though the IJ had not expressly addressed equitable tolling. The only "facts" that the BIA relied on in concluding that equitable tolling did not apply were the date of Sanchez's motion to reopen filing, the date of the deportation order, the date of the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), and the date of the

Second, Sanchez contends that the BIA relied on the incorrect legal premise in denying his motion to sua sponte reopen the 1992 deportation order because the order was not lawful when entered, given that a Washington state court has since vacated the conviction on which the order was based. But the BIA did not rely on that premise in independently concluding that there was no gross miscarriage of justice. Instead, the BIA cited Sanchez's admission of the crimes with which he was charged, concession of deportability, and delay in challenging the conviction as reasons supporting the determination. Consequently, there is no need to remand under *Bonilla*.

Sanchez and Amici also argue that the Board's refusal to sua sponte reopen constitutes legal error because it contravenes a settled course of adjudication in cases of petitioners seeking reopening based on a vacated criminal conviction. In *Menendez-Gonzalez v. Barr*, --- F.3d ---, No. 15-73869, 2019 WL 3022376 (9th Cir. July 11, 2019), we held that even if a consistent pattern of BIA decisions could ever be "clearly defined" enough to make it legal error for the Board to depart from that pattern absent explanation, the few analogous unpublished cases the petitioner relied on there did not show a sufficient pattern of BIA decisions granting sua

Washington Supreme Court's decision in *In re Yung-Cheng Tsai*, 351 P.3d 138 (Wash. 2015). Sanchez may not agree with how the BIA interpreted those dates, but they were all uncontested aspects of the record and in addition were properly subject to administrative notice. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (authorizing the BIA to take notice of the contents of official documents).

sponte reopening based on vacated criminal convictions. *Id.* at \*4-5. Sanchez has similarly failed to establish a sufficient pattern of adjudication here.

In addition, Sanchez contends that the BIA improperly relied on the Government's late-filed appellate brief without expressly ruling on whether the brief would be accepted even though it was filed late. The BIA considers a motion to reopen unopposed if no timely response is made, but the Board "may, in its discretion, consider a brief filed out of time." 8 C.F.R. § 1003.2(g)(3). Sanchez points to no authority for the proposition that the BIA's discretion to consider a late-filed brief is dependent on the Board's expressly stating it is exercising that authority. And even if the BIA erred in accepting the brief without an explicit ruling, Sanchez cannot show prejudice—the BIA cited the Government's brief for basic facts from the record, and Sanchez has not shown that the BIA treated the appeal as "opposed" *because* it accepted the late-filed brief.

## 2. Reinstatement Proceedings

We will uphold the BIA's determinations on withholding of removal and relief under the Convention Against Torture (CAT) if "supported by 'reasonable, substantial, and probative evidence on the record considered as a whole.'" *Abebe v. Gonzales*, 432 F.3d 1037, 1039-40 (9th Cir. 2005) (en banc) (quoting *Mejia-Paiz v. INS*, 111 F.3d 720, 722 (9th Cir. 1997)). We deny Sanchez's challenges to the BIA's denial of both forms of relief.

5

If Sanchez could demonstrate past persecution, he would be entitled to a presumption of a "sufficient likelihood of future persecution" in support of his withholding of removal claim. *Ming Dai v. Sessions*, 884 F.3d 858, 874 (9th Cir. 2018). As the BIA explained, Sanchez did not make this showing. Both of the cases that Sanchez cites to argue that his father's physical and psychological abuse of his mother while he was in utero rises to the level of past persecution, *Mendoza-Pablo v. Holder*, 667 F.3d 1308 (9th Cir. 2012), and *Rusak v. Holder*, 734 F.3d 894 (9th Cir. 2013), are distinguishable. Sanchez has produced no evidence of "deleterious and long-lasting effects" on his health from the abuse or that the beatings created a "material ongoing threat" to his and his mother's safety during his early childhood, so *Mendoza-Pablo* is inapposite. *See* 667 F.3d at 1315. And unlike the petitioner in *Rusak*, Sanchez did not witness his mother's abuse—he did not even learn of it until he was eighteen years old. *See Rusak*, 734 F.3d at 897 (explaining that evidence that Rusak witnessed her father beaten and killed and her mother arrested and sexually assaulted by Belarusian police was sufficient to show past persecution).

Because he cannot demonstrate past persecution, Sanchez's entitlement to withholding of removal hinges on showing that it is more likely than not that he would be subject to persecution on account of a protected status. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001). He argues that because he was involved in drug

6

trafficking twenty-five years ago and because several of his family members actively involved in the drug trade have been murdered by drug trafficking cartels, he will also be murdered if he is removed to Mexico.

The Board's determination that Sanchez does not face a sufficient probability of harm is supported by substantial evidence. He has produced no evidence of personal threats from the cartel or details of his family members' deaths beyond speculative declarations from his mother, himself, and his aunt. Without more specificity about why the cartels would target Sanchez given his limited involvement in the drug trade, the BIA did not err. *See Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1147 (9th Cir. 2005). And because Sanchez's arguments under the CAT also depend on a showing that it is more likely than not that the cartels will harm him, we affirm the BIA's denial of that relief as well.

Finally, Sanchez contends that we have jurisdiction to review the underlying deportation order for legal error because the original removal proceedings were a "gross miscarriage of justice." *See Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138 (9th Cir. 2008). This argument is not properly before us. In its decision in the Reinstatement Proceedings, the BIA refused to entertain the collateral attack on the underlying deportation order because (1) the appeal before it concerned the IJ's decision in withholding-only proceedings, not a decision in reinstatement proceedings, and (2) res judicata precluded review because the Board

7

had already addressed the same "gross miscarriage of justice" argument in its 2017 decision in the Motion to Reopen Proceedings. In his opening and reply briefs, Sanchez focused on rebutting the BIA's reasons for rejecting his gross miscarriage of justice claim in its decision in the Reopening Proceedings without offering any reason why this court should overlook the BIA's refusal to address the issue in the Reinstatement Proceedings, or any reason why that refusal was improper. Even if, as Amici argue, there may be different standards governing motions to sua sponte reopen and collateral challenges to underlying deportation orders in reinstatement proceedings, Sanchez did not identify those distinctions, let alone explain why they require our court to engage in a separate analysis of his underlying deportation order in the Reinstatement Proceedings. Consequently, he has forfeited any collateral challenge in the Reinstatement Proceedings. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 638 (9th Cir. 2012) (citing *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)) (holding that issues that the plaintiff failed to "specifically and distinctly" argue in the opening brief were waived).[2]

Petitions for review **DENIED**.

---

[2] Amici requests that we remand in the Reinstatement Proceedings to allow ICE to reconsider the effect of the state court's dismissal on ICE's discretionary decision whether to place Sanchez in reinstatement proceedings or regular removal proceedings. Because Sanchez did not raise this argument before the BIA or in either of his briefs to our court, we will not entertain this request.